UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x
MARY SHIH LITREL,

                    Plaintiff,

          -against-                         <u>MEMORANDUM & ORDER</u>
                                            02-CV-2410(JS)(ARL)
COUNTY OF SUFFOLK, COUNTY OF
SUFFOLK DEPARTMENT OF HEALTH
SERVICES, CLARE B. BRADLEY,
Commissioner of Department of
Health Services, ROBERT MAIMONI,
Director of Health Administration
and LEONARD MARCHESE, Executive
Assistant for Finance and
Administration,

                    Defendants.
-----------------------------------x
<u>Appearances</u>:
For Plaintiff:          L. Susan Scelzo Slavin, Esq.
                        Slavin, Angiulo & Horowitz, LLP
                        350 Jericho Turnpike, Suite 101
                        Jericho, New York 11753

For Defendants:         Chris P. Termini, Esq.
                        Suffolk County Attorney's Office
                        100 Veterans Memorial Highway
                        Hauppauge, New York 11788


SEYBERT, District Judge:

        On October 21, 2002, Plaintiff Mary Shih Litrel ("Litrel"

or "Plaintiff"), commenced this action against her former employer,

Defendant County of Suffolk ("County"), County of Suffolk

Department of Health Services ("DOH"), and against her former

supervisors, in their official capacities, Clare B. Bradley

("Bradley"), Commissioner of the Department of Health, Robert

Maimoni ("Maimoni"), the Director of Health Administration, and

Leonard Marchese ("Marchese"), Executive Assistant for Finance

Administration, (collectively "Defendants") alleging gender, race, national origin and age discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq; 42 U.S.C. § 1981; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, et seq.

PROCEDURAL HISTORY

Defendants moved to dismiss Plaintiff's claims pursuant to 12(b)(1) and (6) of the Federal Rules of Civil Procedure. In a decision dated February 10, 2003, Defendants' motion was granted, in part, and denied, in part. Plaintiff's claims for retaliation and for age and race discrimination proceeded through discovery.

Currently pending before the Court is Defendants' motion for summary judgment. Defendants seek a determination that, as a matter of law, the remaining claims are defective. For the reasons explained below, Defendants' motion is DENIED.

BACKGROUND

In 1974, Plaintiff commenced her employment with the County in the Department of Civil Service. Def.'s 56.1 Stmt. ¶ 1; Pl.'s 56.1 Stmt. ¶ 1. In 1977, Plaintiff was transferred to the DOH as a budget analyst, and in 1997 she was provisionally appointed as the Health Planning Coordinator. Def.'s 56.1 Stmt. ¶¶ 2-3; Pl.'s 56.1 Stmt. ¶¶ 2-3. In 1998, the DOH went through a reorganization, and in 2000, the Department of Labor conducted an audit of the DOH. Def.'s 56.1 Stmt. ¶¶ 5-6; Pl.'s 56.1 Stmt. ¶¶ 5-

6.    As  a  result  of  the  audit  certain  employees,  including
Plaintiff, had their titles reduced.  Def.'s 56.1 Stmt. ¶ 7; Pl.'s
56.1 Stmt ¶¶ 7, 21.   Plaintiff identifies two employees that in
fact received promotions as a result of the audit, but concedes
that she did not apply for the promotions that they received.
Def.'s 56.1 Stmt. ¶¶ 8-11; Pl.'s 56.1 Stmt. ¶¶ 8-11.

In November 2000, a civil service test was given for the
Health Planning Coordinator position.  Plaintiff took this test and
received a 95 which put her in first place on the list of eligible
hires.  Def.'s Decl. ¶ 3; Pl.'s Aff. ¶ 8.  The Department of Civil
Service decided,  however,  that  the  job  description  for  this
position did not match the duties performed, and Plaintiff was
removed from that position.  Def.'s Decl. ¶ 6; Pl.'s Aff. ¶ 9.

Defendants claim that "Litrel was unable to state the
name of any [c]aucasian employees that received a promotion that
she should have received."  Def.'s 56.1 Stmt. ¶ 12.   Plaintiff
contends, however, that she "identified Defendant Marchese as a
younger [c]aucasian who received a promotion that she should have
received, but [that she] was not given consideration for the
position," and that she  "identified Terry Pace, a [c]aucasian, who
also received a promotion that she should have received."  Pl.'s
56.1 Stmt. ¶ 12.   In addition, Plaintiff states that she
"identified Rick Meyer as an individual who received better
treatment," and alleges that "Defendant Maimoni gave [c]aucasian

employees better treatment than she received." Pl.'s 56.1 Stmt. ¶ 12.

Defendants acknowledge that Plaintiff was provisionally promoted as Health Planning Coordinator. The promotion was with the understanding that once a civil service test was administered the Plaintiff had to pass the test and be reachable. Defendants state that a test was administered and Plaintiff ranked first but they assert that the Department of Civil Service made a determination that the job description of the position invalidated the list. Since the list was invalidated the position was never filled. Def.'s Decl. ¶ 6. Also, Defendants state that Plaintiff was not the only employee negatively affected by the audit and that there was no appointment to Plaintiff's former position after the test. Def.'s Decl. ¶¶ 8,13; Def.'s 56.1 Stmt. ¶ 7.

Plaintiff contends that younger employees took over her responsibilities when her position was deemed nonexistent. Pl.'s Aff. ¶ 10. Plaintiff also states that as a result of her demotion she suffered a $7,000 reduction in her annual salary and a reduction in her retirement benefits. Pl.'s Aff. ¶ 9. Plaintiff alleges that she had "been advised that no other employee received a pay reduction as a result of the desk audit," and further that no other provisional employee was denied permanent status after they had the highest score on a civil service exam. Pl.'s Aff. ¶ 11.

Defendants allege that although Plaintiff filed a Notice of Claim on August 3, 2001 she did not serve any of the named Defendants in this action. Def.'s Decl. ¶ 16. Defendants state that the decision to transfer Plaintiff was made solely by Maimoni, and that he transferred her for legitimate reasons. Def.'s Decl. ¶ 18. Plaintiff replies that she served a Notice of Claim before she was transferred to the Mental Hygiene Division, and she also served the Summons and Complaint on the county before she was transferred to the Methadone Clinic. Pl.'s Aff. ¶¶ 13-14. Plaintiff states that each time she was transferred her treatment worsened and her responsibilities decreased. Id.

LEGAL STANDARD

A district court may properly grant summary judgment only "if the pleadings, deposition, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of proof is on the moving party to show that there is no genuine issue of material fact. See Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)).

"[A]ll ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is

sought." <u>Id</u>. (citing <u>Eastway Constr. Corp. v. City of New York</u>, 762 F.2d 243, 249 (2d Cir. 1985)); <u>see also</u> <u>Hayes v. New York City Dep't of Corr.</u>, 84 F.3d 614, 619 (2d Cir. 1996). "Factual disputes that are irrelevant or unnecessary will not be counted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 248 (quoting <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968)).

Under the law of the Second Circuit Court of Appeals, "when no rational jury could find in favor of the nonmoving party because the evidence is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." <u>Gallo</u>, 22 F.3d at 1224 (citing <u>Dister v. Continental Group, Inc.</u>, 859 F.2d 1108, 1114 (2d Cir. 1988)). Mere conclusory allegations, speculation, or conjecture will not avail a party opposing summary judgment. <u>See</u> <u>Kulak v. City of New York</u>, 88 F.3d 63, 71 (2d Cir. 1996). Indeed, when a motion for summary judgment is made, it is time "'to put up or shut up.' . . . [U]nsupported allegations do not create a material issue of fact." <u>Weinstock v. Columbia Univ.</u>,

224 F.3d 33, 41-42 (2d Cir. 2000)(internal quotations, citations omitted).

Title VII cases are resolvable on summary judgment where appropriate. See Victory v. Hewlett-Packard Co., 34 F. Supp. 2d 809 (1999). Resolution of a claim is possible at this stage because the "salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases than to commercial or other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Otherwise "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." Id. Evidence must be examined in its entirety, rather than piecemeal, in deciding a motion for summary judgment. See Stern v. Trustees of Columbia Univ., 131 F.3d 305, 314 (2d Cir. 1997).

It is within this framework that the Court addresses the instant summary judgment motion.

DISCUSSION

Retaliation Claim

To state a prima facie case of retaliation under Title VII, a plaintiff must assert that (1) she engaged in a protected activity, (2) the defendant was aware of the protected activity, (3) the defendant took an adverse action against plaintiff, and (4) a causal connection existed between the protected activity and

the adverse action.  See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998); Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000).  There is no dispute that the Plaintiff has established the first two elements of a prima facie case of retaliation.

Defendants dispute that Plaintiff has established the third element, an adverse employment action.  An adverse employment action is a "materially adverse change in the terms, privileges, duration and conditions of employment."  Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002).  The Second Circuit has held that "adverse employment actions are not limited to 'pecuniary emoluments, . . .'" instead, "[l]esser actions such as negative employment evaluation letters may also be considered adverse."  Id. (citing Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) (defining adverse action to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand.")); Preda v. Nissho Iwai Am. Corp., 128 F.3d 789, 791 (2d Cir. 1997).

In light of the expansive definition of adverse action employed by the Second Circuit, the Court finds that the actions Plaintiff alleges would be considered adverse employment actions. Thus, if at trial, Plaintiff was able to prove that the complained of actions occurred, her claim would be actionable.  There is evidence that after Litrel served her Notice of Claim she was (1) transferred to a different County division, (2) assigned to several

different methadone facilities working in an area which she had no knowledge, (3) placed in several locations including a cubicle, the lunch room, and a shared office -- some of these locations had dim light, no telephone, and no computer, (4) stripped of her managerial responsibilities, and (5) moved into other people's offices. These actions amount to more than isolated, minor incidents which altered Plaintiff's treatment at work, the environment she encountered, the benefits and compensation she earned, her ability to remain at and perform her job or any other condition or privilege of her employment. "Courts require actions that are more significant and permanent." Figueroa v. City of New York, 198 F. Supp. 2d 555, 568 (S.D.N.Y. 2002)(holding that negative evaluation without consequence is not an adverse action). See also Wan Sun Penny v. Winthrop-Univ., 883 F. Supp. 839, 845 (E.D.N.Y. 1995) ("An 'adverse action' is one which adversely impacts on the employee, such as a discharge, demotion, or failure to promote."); Weeks v. New York State, 273 F.3d 76, 86 (2d Cir. 2001) (holding that criticism is not an adverse action). The Court finds that the actions outlined above constitute adverse employment actions. Each one of the actions impacted upon the Plaintiff in an adverse manner. The conditions that have been established for the purposes of this motion indicate that there was interference with Litrel's ability to perform and stay at her job. Accordingly, there is sufficient evidence for the retaliation claim to remain.

The Second Circuit has held that a "close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation." Treglia, 313 F.3d at 720. In this case, the Plaintiff has alleged several adverse employment actions, which allegedly occurred immediately after the Notice of Claim was filed. The individual Defendants stated, at their depositions, that they could not remember whether they knew of the Notice of Claim. However, as Plaintiff points out, they did not affirmatively state that they were unaware of the Notice of Claim. The Court finds that the temporal relationship between the protected activities and the adverse actions alleged is sufficient to establish the fourth element of the prima facie case.

Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to establish a legitimate, non-discriminatory explanation for the adverse action taken. See Id. at 721. In this case, the Defendants have offered explanations for the adverse actions taken. The Defendants explain that based on the audit, Litrel had to be removed from the position she was in. While that may justify a reassignment, the actions taken far exceed what a reasonable response may have been. For example, Plaintiff's placement in a cubicle, the lunch room, and a shared office is exceptional. Her placement is particularly troublesome in view of the County's written procedure for office

placement.[1]  Even without a written policy, it is absurd to place a professional with many years experience in an office in the lunch room.  The proffered explanations, and the Defendants' responses, are in factual dispute and can only be resolved at trial. Accordingly, the Defendants' motion for summary judgment is denied.

<u>Discrimination Claim under Title VII</u>

Defendants asserts that Plaintiff is unable to prove a discrimination claim under Title VII.  Plaintiff must show that (1) she belongs to a racial minority, (2) she applied and was qualified for a job which the employer was seeking applicants, (3) despite her qualifications she was rejected, and (4) after her rejection, the position remained open and the employer continued to seek applicants with the same qualifications.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L. Ed. 2d 668 (1973).  "The burden must then shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  <u>Id.</u>  In the summary judgment context, an opposing plaintiff must proffer evidence from which a fact-finder could reasonably conclude that the employers asserted reasons were pre-textual and that the real reason was discrimination.  <u>Id.</u> at 804. It is well established that in setting forth a prima facie case under Title VII, a plaintiff's pleading burden is de minimus.  <u>See</u>

---

[1] There is some evidence of a written office assignment procedure, that procedure was not included in the instant motion.

<u>Brown v. Coach Stores, Inc.</u>, 163 F.3d 706, 710 (2d Cir. 1998); <u>De La Cruz v. N.Y. City Human Res. Admin. Dep't of Soc. Serv.</u>, 82 F.3d 16, 20 (2d Cir. 1996).  In addition, this Court previously found that only discriminatory acts which occurred after November 4, 2000, could be asserted.

It is undisputed that Plaintiff is a racial minority, and that she took the civil service test for the job she was in – the equivalent of applying for the position – and received the highest score on the test – the equivalent of being qualified.  It is also undisputed that she was removed from, or in the alternative not permanently placed into, this position.  Defendants maintain that the position was deemed to not exist by the Department of Civil Service and that is was not subsequently filled.  Plaintiff, on the other hand, provides evidence that her former responsibilities were assigned to younger caucasian employees.  The evidence that Plaintiff has proffered support her prima facie case.

The burden then shifts to Defendants to articulate some legitimate, nondiscriminatory reason.  As discussed above, the Defendants do not have a legitimate, nondiscrimnatory reason for their actions.  The motion for summary judgment as to the Title VII claim is denied.

<u>Discrimination Claim under ADEA</u>

In order to establish a prima facie case of age discrimination, there needs to be enough evidence to create an

inference that the employment decision was based on age.  <u>O'Connor</u>
<u>v. Consolidated Coin Caterers Corp.</u>, 517 U.S. 308, 116 S. Ct. 1307,
134 L. Ed. 2d 433 (1996).

> The discrimination prohibited by the ADEA is
> discrimination because of [an] individuals age, though
> the prohibition is limited to individuals who are at
> least 40 years of age. This language does not ban
> discrimination against employees because they are aged 40
> or older; it bans discrimination against employees
> because of their age, but limits the class to those who
> are 40 or older.

<u>Id.</u> at 312; <u>see</u> <u>also</u> 29 U.S.C. § 623(a)(1).  "Thus, the ADEA
commands that employers are to evaluate their older employees on
their merits and not their age. The employer cannot rely on age as
a proxy for an employee's remaining characteristics, such as
productivity, but instead must focus on those factors directly."
<u>Hazen Paper Comp. v. Biggins</u>, 507 U.S. 604, 113 S. Ct. 1701, 123 L.
Ed. 2d 338 (1993)(internal quotation marks omitted).  Here,
Plaintiff's claim relies heavily on her allegations that younger
similarly situated employees were treated better than her.  This
can best be described as disparate treatment.

Simply put, disparate treatment cases involve a situation
where the employer treats some people less favorably than others on
the basis of some discriminatory motive, such as age or race.  <u>Id.</u>
at 609.  In these cases, proof of discriminatory motive is
critical, although in some cases it can be inferred from the mere
fact of difference in treatment.  <u>Id.</u>  "The disparate treatment
theory is of course available under the ADEA, as the language of

that statute makes clear."[2]  "In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employers decision." <u>Id.</u> at 610. "Whatever the employers decision making process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." <u>Id.</u>

Here, it is uncontested that Litrel is within the group protected under the ADEA.  The rest of the facts with regards to this claim are in dispute.  However, for the purposes of this motion, Plaintiff has established a prima facie case.  She has provided the necessary evidence that she is a member of the protected class, certain individuals were treated more preferentially than she was, and that younger employees were treated more preferentially.  The burden then shifts to the Defendants to articulate their legitimate, non-discriminatory explanation.  Again, as discussed above, the Court finds that the Defendants' explanation does not meet their burden because there are material issues in dispute.  Thus, the Defendants' motion for summary judgment is denied.

_____

2 "It shall be unlawful for an employer . . . to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals age." <u>Hazen</u>, 507 U.S. at 610 (citing 29 U.S.C § 623).

<u>Section 1981</u>

Defendants provides a one sentence argument and requests that this Court grant summary judgment against the Plaintiff. This Court declines. Section 1981 states, in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts . . . and to the full and equal benefit of all laws . . . as is enjoyed by white persons. . . .

42 U.S.C. § 1981. "To establish a § 1981 claim, a plaintiff ... must show (1) that she is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981." <u>Lauture v. IBM Corp.</u>, 216 F.3d 285, 261 (2d Cir. 2000)(citing <u>Brown v. City of Oneonta</u>, 195 F.3d 111, 121 (2d Cir. 1999)(citing <u>Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 7 F.3d 1085, 1087 (2d Cir. 1993)(per curiam)).

A Section 1981 claim may be based on a variety of employment actions including the failure to promote, <u>Patterson v. McLean Credit Union</u>, 491 U.S. 164, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989), hostile work environment, <u>Whidbee v. Garzarelli Food Specialities, Inc.</u>, 223 F.3d 62, 68 (2d Cir. 2000), unlawful termination, <u>Lauture</u>, 216 F.3d at 262, retaliation, <u>Taitt v. Chem. Bank</u>, 849 F.2d 775, 777 (2d Cir. 1988) and constructive discharge, <u>Lopez v. S.B. Thomas</u>, 831 F.2d 1184, 1187 (2d Cir. 1987). Once the prima facie case is established, the <u>McDonnell Douglas</u> burden-

shifting analysis applies. There is sufficient evidence to sustain Plaintiff's claim that her race was implicated by the way she was treated. After the burden was shifted to Defendants, they failed to show a legitimate, non-discriminatory explanation for their actions. There are material facts at issue which require a determination at trial. The Court DENIES summary judgment as to Plaintiff's Section 1981 claim.

<u>CONCLUSION</u>

For the forgoing reasons, Defendants' Motion for Summary Judgment is DENIED.


SO ORDERED

<u>/s/ JOANNA SEYBERT</u>
Joanna Seybert, U.S.D.J.


Dated:     Central Islip, New York
           September 28, 2005